UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| J&J SPORTS PRODUCTIONS, INC., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 3:13-CV-1047-B |
| § | |
| STARZZ LOUNGE, LLC, et al., § | |
| § | |
| Defendants. § | |

## MEMORANDUM ORDER AND OPINION

Before the Court is Plaintiff J&J Sports Productions, Inc.'s Motion for Declaratory Judgment (doc. 13), filed on August 14, 2013. For the reasons provided below, the Motion is **GRANTED in part** and **DENIED in part**.

### I.

### BACKGROUND

This is an anti-piracy case brought under the Federal Communications Act of 1934, as amended, 47 U.S.C. § 553 and 605. Plaintiff J&J Sports Productions, Inc. (J&J) was the license company exclusively authorized to sublicense the closed circuit telecast of "The Event": Manny Pacquiao v. Joshua Clottey, WBO Welterweight Championship Fight Program, including undercard or preliminary bouts (collectively "the Event"), to closed circuit locations throughout Texas. Doc. 1, Orig. Compl. ¶ 7. In order to broadcast the Event, an establishment was required to receive contractual authorization from J&J and pay a fee. *Id.* ¶¶ 8-9. If an establishment contracted with J&J to broadcast the Event, then it was provided with electronic decoding capabilities or satellite coordinates necessary to gain access to the Event. *Id.* ¶¶ 10, 12. The signal was otherwise coded and

could not be accessed unless an establishment used electronic decoding equipment. *Id*. On March 13, 2013, Defendants, owners and operators of a night club, broadcast the Event without having received contractual authorization from J&J. *Id*. ¶¶ 13-17; Doc. 13-1, Sorenson Aff. Ex. A-2.

J&J filed its Original Complaint on March 11, 2013, alleging that Defendants had violated the Federal Communications Act. Doc. 1, Orig. Compl. ¶¶ 18-19. Specifically, J&J alleges that Defendants willfully intercepted or received, or assisted in intercepting and receiving, the Event in violation of 47 U.S.C. §§ 553 and 605. Although Defendants Frederick Sambina Alima and Joel Kyalo Muthoka were served on July 12, 2013, and Defendant Starzz Lounge, LLC, was served on July 18, 2013, none of the Defendants answered or otherwise responded by the appropriate deadlines. *See* Docs. 8, 11. Accordingly, the Clerk of Court entered a default against Defendants on August 14, 2013. Doc. 14. That same day, J&J moved for default judgment. Doc. 13. To date, Defendants have failed to file a response with the Court.

## II.

## LEGAL STANDARD

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once default has been entered, the court may enter a default judgment against the defaulting defendant upon motion of the plaintiff. Fed. R. Civ. P. 55(b). Through the entry of default judgment, the "conduct on which liability is based may be taken as true as a consequence of the default." *Frame v. S-H Inc.*, 967 F.2d 194, 205 (5th Cir. 1992). In considering a motion for default judgment, the court accepts as true the well-pleaded allegations of facts in the complaint. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

In determining whether a default judgment should be entered against a defendant, courts have developed a two-part analysis. *See, e.g., Insurance Co. of the West v. H & G Contractors, Inc.*, No. C-10-390, 2011 WL 4738197, at *2-3 (S.D. Tex. Oct. 5, 2011). First, the court must consider whether the entry of default judgment is appropriate under the circumstances. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). The factors relevant to this inquiry include: (1) whether material issues of fact exist; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion. *Id.* Second, the court must assess the merits of the plaintiff's claims and find sufficient basis in the pleadings for the judgment. *See Nishimatsu Constr.*, 515 F.2d at 1206. Although the defendant may be in default, "[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.*

### III.

### ANALYSIS

A.   *Whether the Entry of Default Judgment is Appropriate*

In considering the six factors laid out in *Lindsey*, the Court finds that they weigh in favor of granting a default judgment. Defendants have not filed any responsive pleadings. Consequently, there are no material facts in dispute. *Lindsey*, 161 F.3d at 893; *Nishimatsu Constr.*, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well pleaded allegations of fact."). Defendants' "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing Plaintiff's interests." *Insurance Co.,* 2011 WL 4738197, at *3 (citing *Lindsey*, 161 F.3d at 893). In addition, there is no evidence before the Court to indicate that Defendants' silence is the

result of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Indeed, Defendants have had almost four months to answer, and have filed nothing with the Court to explain their reticence. *Cf. Elite v. KNR Group*, 216 F.3d 1080 (Table), 2000 WL 729378, at *1 (5th Cir. May 19, 2000) (per curiam) (holding default judgment to be inappropriate where defendant sent letter to court explaining his failure to appear was due to financial privation). The Defendants' complete failure to respond during these last four months therefore mitigates the harshness of a default judgment. *John Perez Graphics & Design, LLC v. Green Tree Inv. Group, Inc.*, No. 3:12-cv-4194-M, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013). Furthermore, J&J only seeks the relief to which it is entitled under the law. *Id.* Finally, the Court is not aware of any facts that would give rise to "good cause" to set aside the default if challenged by Defendants. *Lindsey*, 161 F.3d at 893. Therefore, the Court concludes that default judgment is proper.[1]

B.      *Whether There is a Sufficient Basis for Judgment in the Pleadings*

Due to their default, Defendants are deemed to have admitted the allegations set forth in the Complaint. Nonetheless, the Court must review the pleading to determine whether J&J can establish a viable claim for relief. *Nishimatsu Constr.*, 515 F.2d at 1206 (noting that "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover.").

J&J alleges that Defendants intercepted or received, or assisted in intercepting or receiving, the Event in violation of 47 U.S.C. §§ 553 and 605. Doc. 1, Orig. Compl. ¶¶ 18-19. A person violates § 605 when he "intercept[s] any radio communication . . . or receive[s] or assist[s] in receiving any interstate or foreign communication by radio and use[s] such communication . . . for

---

[1] Plaintiffs also make the requisite showing by affidavit that Defendants are not minors, incompetent, or in the military. Doc. 12, Diaz Aff. Ex. A ¶ 4.

his own benefit or for the benefit of another not entitled thereto." 47 U.S.C. § 605(a). Similarly, one violates § 553 by "intercept[ing] and receiv[ing] or assist[ing] in intercepting or receiving any communications service offered over a cable system" without authorization. 47 U.S.C. § 553(a)(1). The unauthorized interception of satellite or cable transmissions violates both §§ 553 and 605. *Entertainment by J&J, Inc. v. Al-Waha Enterprises*, 219 F. Supp. 2d 769, 774 (S.D. Tex. 2002). The pleadings establish that the Event was transmitted via satellite and that Defendants intercepted the Event without authorization and broadcast it to the patrons of their establishment for their own commercial benefit. Doc. 1, Orig. Compl. ¶¶ 10, 13, 15. J&J has therefore established a viable claim for relief.

C.      *Damages*

"A defendant's default concedes the truth of the allegations of the Complaint concerning the defendant's liability, but not damages." *Insurance Co.*, 2011 WL 4738197, at *4 (citing *Jackson v. FIE Corp.*, 302 F.3d 515, 524-25 (5th Cir. 2002)). Damages must be proven by a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). If the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents, a hearing is unnecessary. *James v. Frame*, 6 F.3d 307, 370 (5th Cir. 1993).

A party aggrieved by a violation of § 605 may elect to receive either actual damages or statutory damages. 47 U.S.C. § 605(e)(3)(C)(I).[2] Statutory damages for each violation of the section

---

[2]Although Defendants likely violated both §§ 553 and 605, J&J cannot recover under both provisions. *Al-Waha Enterprises*, 219 F. Supp. 2d at 775. The Court will therefore focus only on the award of damages under § 605 because it allows for greater recovery by J&J. *Id.*

must be awarded in an amount no less than $1,000 and no more than $10,000, as the Court considers just. *Id.* § 605(e)(3)(C)(i)(II). If the Court finds that a violation was committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain," it may, in its discretion, increase the damage award by an amount of not more than $100,000. *Id.* § 605(e)(3)(C)(ii). An aggrieved party who prevails shall receive full costs, including reasonable attorney's fees. *Id.* § 605(e)(3)(B)(iii).

  1. <u>Statutory Damages</u>

J&J seeks statutory rather than actual damages and asks for an award of $10,000, the statutory maximum, against Defendants. Doc. 13, Pl.'s Br. 4. It argues that, in addition to the lost revenue that it would have received had Defendants properly contracted to broadcast the Event, it should receive additional amounts to compensate it for the loss of "values, benefits, and profits derived from the unauthorized broadcast" as well as the lost value of "business investment, business opportunities, and goodwill." Doc. 13, Pl.'s Br. 5. To support its damages claim, Plaintiff relies upon the affidavit of Thomas P. Riley, an attorney who J&J has retained to assist it in the prosecution of infringement matters. Doc. 13-1, Riley Aff. Ex. A. ¶ 3. Riley states that in addition to lost licensing fees, J&J's damages include loss of goodwill from legitimate establishments who pay sublicense fees to broadcast closed-circuit programming like the Event. *Id.* ¶ 15. He avers that J&J's continued viability depends upon legitimate establishments paying sublicense fees for the right to broadcast programming like the Event, and that the incentive for establishments to pay such fees is undermined when unauthorized establishments like Defendants' night club broadcast such programming. *Id.* Accordingly, Riley insists that in order to adequately deter piracy, violators of the Federal Communications Act must be held accountable for a substantial amount above the market value of

the relevant sublicense fees. *Id.* ¶ 17. *Accord J&J Sports Productions, Inc. v. Bawlilai Corp.*, No. 3:12-cv-3811-L, 2013 WL 4398958, at *1 (N.D. Tex. Aug. 14, 2013) (Slip Copy) ("[S]uch damages are necessary to deter Bawlilai and other commercial establishments and entities from pirating or stealing protected communications."); *Al-Waha Enterprises*, 219 F. Supp. 2d at 776 ("Merely requiring Al-Waha to pay the price it would have been charged to obtain legal authorization to display the event does nothing to accomplish this object [to deter future violations of the Communications Act]."); *J&J Sports Productions, Inc. v. Beck*, No. L-13-57, 2013 WL 5592333, at *2 (S.D. Tex. Oct. 9, 2013) (Slip Copy) ("[T]o adequately deter piracy, the cost of piracy must be significantly higher than the cost of buying a license.").

Courts have assessed various amounts in statutory damages for violations similar to those presented here. *See Beck*, 2013 WL 5592333, at *2 (awarding base statutory damages in the amount of $5,000); *J&J Sports Productions, Inc. v. Q Café, Inc.*, No. 3:10-cv-2006-L, 2012 WL 216724, at *1 (N.D. Tex. Jan. 25, 2012) (awarding base statutory damages of $10,000); *Al-Waha Enterprises*, 219 F. Supp. 2d at 777 (same). Taking into account the need to deter future violations and the fact that the sublicensing fee here would have been approximately $2000 had Defendants actually paid to broadcast the Event, Doc. 13-1, Rate Card Ex. A-3, the Court finds that J&J's request for statutory damages in the amount of $10,000 is reasonable. The Court will therefore award J&J $10,000 in base statutory damages.

2. <u>Additional Damages</u>

J&J also seeks $50,000 in additional damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), alleging that Defendants "willfully and for purposes of direct or indirect commercial advantage or private financial gain" violated the Communications Act. Doc. 13, Pl.'s Br. 6-9. J&J does not submit

evidence to directly show that Defendants wilfully violated the Act, but instead argues that the very fact that Defendants intercepted the Event is proof of willfulness because there is no way for Defendants to have "innocently" accessed the Event. Doc. 13, Pl.'s Br. 7. Courts have generally found this reasoning to be persuasive given the limited means by which defendants can access closed-circuit, pay-per-view events and the small likelihood that an establishment could intercept such broadcasts by chance. *See Al-Waha Enterprises*, 219 F. Supp. 2d at 777 (finding willfulness given the "limited methods of intercepting closed circuit broadcasting of pay-per-view events" and "the low probability that a commercial establishment could intercept such a broadcast merely by chance"); *Q Café, Inc.*, 2012 WL 216724, at *2 (citing *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("There can be no doubt that the violations were willful and committed for purposes of commercial advantage and private gain. Signals do not descramble spontaneously, nor do television sets connect themselves to cable distributions systems.")). The Court likewise finds that the evidence and allegations here are sufficient to support a finding of willfulness. Moreover, it is clear that Defendants intercepted the Event "for purposes of direct or indirect commercial advantage or private financial gain," because they charged a cover fee and sold food and drinks to those present during the broadcast. Doc. 13-1., Sorenson Aff. Ex. A-1; *Kingvision Pay-Per-View, Ltd. v. Scott E's Pub, Inc.*, 146 F. Supp. 2d 955, 960 (E.D. Wis. 2001). J&J is therefore entitled to additional damages under the statute.

Although the statute allows for additional damages in an amount not greater than $100,000 for willful violations, 47 U.S.C. § 605(e)(3)(C)(ii), courts have taken very different approaches in determining the proper amount of additional damages to award in cases similar to this one. *See, e.g.*, *Q Café, Inc.*, 2012 WL 216724, at *2 (awarding additional damages in the amount of five times the

statutory base award, citing the location of the broadcast in an urban area and the importance of deterring future violations); *Beck*, 2013 WL 5592333, at *2 (awarding total damages of $15,000 because defendant did not charge a cover charge, only 30 patrons viewed the event, and defendant was not a repeat offender); *Al-Waha Enterprises*, 219 F. Supp. 2d at 777 (awarding triple damages for a willful violation); *Kingvision Pay-Per-View, Ltd.*, 146 F. Supp. 2d at 960 (awarding five times the base statutory amount because defendant advertised the event, charged a cover charge, and showed the event on five television monitors). Here, J&J alleges and submits evidence to show that Defendants charged a cover charge of $10 and were playing the Event on five large televisions throughout their establishment. Doc. 13-1, Sorenson Aff. Ex. A-2. It also provides evidence that the capacity of the Defendants' establishment was approximately 200 people, and that there were approximately 30 people in the establishment during the broadcast. *Id.* While there is little guidance as to how certain factors should affect the calculation of additional damages, many courts have applied a multiplier of three when faced with a defendant who is not a repeat offender and who broadcast an event willfully for her own commercial benefit. *Kingvision Pay-Per-View, Ltd. v. Guerrero*, No. 3:08-cv-1970-G-BF, 2009 WL 1973285, at *5 (N.D. Tex. July 7, 2009); *Nat'l Satellite Sports, Inc. v. Garcia*, No. 3:01-cv-1799-D, 2003 WL 21448375, at *2 (N.D. Tex. June 18, 2003); *Beck*, 2013 WL 5592333, at *2; *Al-Waha Enterprises*, 219 F. Supp. 2d at 777. Thus, taking into account the present evidence, the need to deter future violations, and the relevant authority, the Court finds that additional damages equal to three times the base statutory damages is reasonable, and therefore awards J&J $30,000 in additional damages.

  3. <u>Permanent Injunction</u>

  J&J also seeks a permanent injunction against Defendants to prevent them from ever

intercepting or exhibiting an unauthorized program in violation of the Federal Communications Act. Doc. 13, Pls.' Br. 10. Under the Communications Act, a court may grant a final injunction "on such terms as it may deem reasonable to prevent or restrain violations" of the Act. 47 U.S.C. § 605(e)(3)(B)(i). J&J provides no reason or explanation for seeking this injunction, however, and to the extent that it seeks an injunction that prevents Defendants from violating the law, they are already under an obligation to do so. The Court therefore **DENIES** J&J's request for a permanent injunction.

    4.    Attorney's Fees

Under the Communications Act, a court is required to order the recovery of full costs, including attorney's fees, to an aggrieved party who prevails. 47 U.S.C. § 605(e)(3)(B)(iii). J&J seeks to recover its attorney's fees and suggests that a one-third contingent fee is appropriate under the circumstances. Doc. 13, Pl.'s Br. 10. In his affidavit, David Diaz, J&J's attorney, alternatively requests attorney's fees of at least $1,000 based on an hourly rate of $250 an hour and an estimation that J&J's attorneys have expended or will expend four hours of work preparing Plaintiff's Motion for Default Judgment. Doc. 13-1, Diaz Aff. Ex. B ¶ 8. The Court finds this latter request for fees to be more reasonable under the circumstances.

The Fifth Circuit has described the basic procedure and standard for determining attorneys' fees as follows:

> The determination of a fees award is a two-step process. First the court calculates the "lodestar" which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. The court should exclude all time that is excessive, duplicative, or inadequately documented. Once the lodestar amount is calculated, the court can adjust it based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*,

488 F.2d 714, 717-19 (5th Cir. 1974).

*Smith v. Acevedo*, 478 F. App'x 116, 124 (5th Cir. 2012) (quoting *Jimenez v. Wood Cnty*, 621 F.3d 372, 379-80 (5th Cir. 2010)). The *Johnson* factors are (1) time and labor required for the litigation; (2) novelty and difficulty of the questions presented; (3) skill requisite to perform the legal services properly; (4) preclusion of other employment; (5) customary fee; (6) whether the fee is fixed or contingent; (7) limitations imposed by the client or circumstances; (8) amount involved and the result obtained; (9) experience, reputation, and ability of the attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717-19.

Although J&J submits no time sheets or other evidence setting forth the number of hours that the attorney expended in this case, the Court accepts as reasonable Diaz's estimation that J&J's attorneys expended four hours to obtain declaratory judgment. The Court also finds that the hourly rate of $250 is reasonable based on Diaz's affidavit detailing his firm's experience with anti-piracy cases and other submitted documents laying out the community rates for similar work. Doc. 13-1, Diaz Aff. Ex. B ¶ 4; 13-1, Rating System Documents Ex. B-1; 13-1, Hourly Rate Matrices B-2. Considering the twelve *Johnson* factors described above, the Court does not think it is necessary to make any adjustment to these figures. Accordingly, the Court awards J&J $1,000 in attorney's fees.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** J&J's Motion for Default Judgment. Specifically, the Court **GRANTS** J&J's request for statutory damages in the amount of $10,000 as well as its request for additional damages in the amount of $30,000,

collectively totaling $40,000. The Court also awards attorney's fees in the amount of $1,000 plus post-judgment interest pursuant to 28 U.S.C. § 1961 and all costs of court. The Court hereby **DENIES** J&J's request for a permanent injunction. A final judgment will issue separately, pursuant to Federal Rule of Civil Procedure 58.

**SO ORDERED.**

**SIGNED: December 11, 2013.**

**JANE J. BOYLE**
**UNITED STATES DISTRICT JUDGE**